UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| WALTER H. KEHN,<br><br>　　　　　　Plaintiff,<br><br>vs.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>　　　　　　Defendant. | No. 12-cv-0399-JPH<br><br>ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |

　　　　BEFORE THE COURT are cross-Motions for Summary Judgment. (Ct. Rec. 19, 21.) Attorney David L. Lybbert represents plaintiff; Special Assistant United States Attorney Richard M. Rodriguez represents defendant. The parties have consented to proceed before a magistrate judge. (Ct. Rec. 6.) After reviewing the administrative record and briefs filed by the parties, the court GRANTS plaintiff's Motion for Summary Judgment and DENIES defendant's Motion for Summary Judgment.

**JURISDICTION**

　　　　Plaintiff Walter H. Kehn (plaintiff) protectively filed for disability insurance benefits (DIB) and supplemental security income (SSI) on June 17, 2009. (Tr. 110, 113.) Plaintiff alleged an onset date of January 3, 2009. (Tr. 36, 110, 113.) Benefits were denied initially and on reconsideration. (Tr. 74, 81, 83.) Plaintiff requested a hearing before an administrative law judge (ALJ), which was held before ALJ James Sherry on February 8, 2011. (Tr. 35-69.) Plaintiff was represented by counsel and testified at the hearing. (Tr. 38-61, 66-68.) Vocational expert Trevor Duncan also testified. (Tr. 61-66.) The ALJ denied benefits (Tr. 16-27) and the Appeals Council denied review. (Tr. 1.) The matter is now before this court pursuant to 42 U.S.C. § 405(g).

## STATEMENT OF FACTS

The facts of the case are set forth in the administrative hearing transcripts, the ALJ's decision, and the briefs of plaintiff and the Commissioner, and will therefore only be summarized here.

Plaintiff was 53 years old at the time of the hearing. (Tr. 38.) He has a high school education plus one year of college. (Tr. 40.) He was in the Army National Guard for 20 years. (tr. 41.) He had some training in cooking, pastries, small diesel mechanics, and multi fuels while in the National Guard. (Tr. 41.) He has work experience as a truck driver and a school bus driver. (Tr. 43-44.) He cannot work because he cannot remember certain things he should be able to remember and because of his back. (Tr. 47.) He has daily back pain although he has not been treated for it. (Tr. 49.) He had a right knee replacement in September 2009. (Tr. 47-48.) He has had a long recovery with lots of swelling and water on the knee. (Tr. 48.) He continues to have symptoms in the right knee. (Tr. 48.) He is experiencing similar symptoms in his left knee. (Tr. 48.) He has had treatment for symptoms of depression. (Tr. 49.) He takes multiple medications for depression and anxiety. (Tr. 50.) Anxiety causes tremors in his left hand. (Tr. 40.) In the past he had daily thoughts of suicide. (Tr. 50.) At the time of the hearing, it had gotten a little better. (Tr. 50.) He has difficulty with his memory and with focusing on tasks. (Tr. 50-51.) He feels down all the time. (Tr. 51.) Plaintiff testified that at least twice a week he sleeps in his recliner all day and does not do anything. (Tr. 51.) He does not want to be around a lot of people. (Tr. 55.)

## STANDARD OF REVIEW

Congress has provided a limited scope of judicial review of a Commissioner's decision. 42 U.S.C. § 405(g). A Court must uphold the Commissioner's decision, made through an ALJ, when the determination is not based on legal error and is supported by substantial evidence. *See Jones v. Heckler*, 760 F. 2d 993, 995 (9th Cir. 1985); *Tackett v. Apfel*, 180 F. 3d 1094, 1097 (9th Cir. 1999). "The [Commissioner's] determination that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983) (citing 42 U.S.C. § 405(g)). Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir. 1975), but less than a preponderance. *McAllister v. Sullivan*, 888 F.2d 599, 601-602 (9th Cir. 1989); *Desrosiers v. Secretary of Health and Human Services*, 846 F.2d 573, 576 (9th Cir. 1988). Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citations omitted). "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965). On review, the Court considers the record as a whole, not just the evidence supporting the decision of the Commissioner. *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989) (quoting *Kornock v. Harris*, 648 F.2d 525, 526 (9th Cir. 1980)).

It is the role of the trier of fact, not this Court, to resolve conflicts in evidence. Richardson, 402 U.S. at 400. If evidence supports more than one rational interpretation, the Court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Sec'y of Health and Human Serv.*, 839 F.2d 432, 433 (9th Cir. 1988). Thus, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-30 (9th Cir. 1987).

## SEQUENTIAL PROCESS

The Social Security Act (the "Act") defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423 (d)(1)(A), 1382c (a)(3)(A). The Act also provides that a plaintiff shall be determined to be under a disability only if his impairments are of such severity that plaintiff is not only unable to do his previous work but cannot, considering plaintiff's age, education and work experiences, engage in any other substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). Thus, the definition of disability consists of both medical and vocational components. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920. Step one determines if he or she is engaged in substantial gainful activities. If the claimant is engaged in

substantial gainful activities, benefits are denied. 20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(I).

If the claimant is not engaged in substantial gainful activities, the decision maker proceeds to step two and determines whether the claimant has a medically severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied.

If the impairment is severe, the evaluation proceeds to the third step, which compares the claimant's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii); 20 C.F.R. § 404 Subpt. P App. 1. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.

If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents the claimant from performing work he or she has performed in the past. If plaintiff is able to perform his or her previous work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). At this step, the claimant's residual functional capacity ("RFC") assessment is considered.

If the claimant cannot perform this work, the fifth and final step in the process determines whether the claimant is able to perform other work in the national economy in view of his or her residual functional capacity and age, education and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Bowen v. Yuckert*, 482 U.S. 137 (1987).

The initial burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). The initial burden is met once the claimant establishes that a physical or mental impairment prevents him from engaging in his or her previous occupation. The burden then shifts, at step five, to the Commissioner to show that (1) the claimant can perform other substantial gainful activity and (2) a "significant number of jobs exist in the national economy" which the claimant can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

**ALJ'S FINDINGS**

At step one of the sequential evaluation process, the ALJ found plaintiff has not engaged in substantial gainful activity since January 3, 2009, the alleged onset date. (Tr. 18.) At step two, the ALJ found plaintiff has the following severe impairments: right knee status post total knee replacement, dyspepsia, prepatellar hematoma, obesity, major depressive disorder, and generalized anxiety disorder. (Tr. 18.) At step three, the ALJ found plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. (Tr. 18.) The ALJ then determined:

> [C]laimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant can stand/walk and sit for about 6 hours each in an 8-hour [day], with unlimited push/pull within lifting restrictions; never climb ladders, ropes and scaffold; occasionally climb ramps or stairs; occasionally stoop, crouch, kneel, and crawl; frequently balance; avoid concentrated exposure to unprotected heights and use of moving machinery; simple routine and repetitive tasks; no fast-paced production requirements; and superficial contact with the general public and co-workers.

(Tr. 20). At step four, the ALJ found plaintiff is unable to perform past relevant work. (Tr. 25.) After considering plaintiff's age, education, work experience, residual functional capacity and the testimony of a vocational expert, the ALJ determined there are jobs that exist in significant numbers in the national economy that plaintiff can perform. (Tr. 26.) Thus, the ALJ concluded plaintiff has not been under a disability as defined in the Social Security Act from January 3, 2009 through the date of the decision. (Tr. 26.)

**ISSUES**

The question is whether the ALJ's decision is supported by substantial evidence and free of legal error. Specifically, plaintiff asserts the ALJ: (1) failed to properly determine the RFC; (2) failed to properly evaluate plaintiff's mental impairments; (3) failed to make a proper credibility finding; (4) failed to address examining physician evidence; and (5) failed to pose a complete and accurate hypothetical to the vocational expert. (ECF No. 20 at 9-22.) Defendant argues: (1) the RFC and hypothetical to the vocational expert included the limitations properly found credible and supported by substantial evidence; (2) the ALJ's interpretation of the medical evidence was rational and entitled to deference; (3) the credibility determination was proper. (ECF No. 21 at 6-16.)

**DISCUSSION**

**1.    Credibility**

Plaintiff argues the ALJ failed to make a proper credibility finding. (ECF No. 20 at 12-13, 15-17.) In social security proceedings, the claimant must prove the existence of a physical or mental impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings; the claimant's own statement of symptoms alone will not suffice. 20 C.F.R. § 416.908. The effects of all symptoms must be evaluated on the basis of a medically determinable impairment which can be shown to be the cause of the symptoms. 20 C.F.R. § 416.929.

Once medical evidence of an underlying impairment has been shown, medical findings are not required to support the alleged severity of the symptoms. *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991). If there is evidence of a medically determinable impairment likely to cause an alleged symptom and there is no evidence of malingering, the ALJ must provide specific and cogent reasons for rejecting a claimant's subjective complaints. *Id.* at 346. The ALJ may not discredit pain testimony merely because a claimant's reported degree of pain is unsupported by objective medical findings. *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989). The following factors may also be considered: (1) the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's testimony or between his testimony and his conduct; (3) claimant's daily living activities; (4) claimant's work record; and (5) testimony from physicians or third parties concerning the nature, severity, and effect of claimant's condition. *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002).

If the ALJ finds that the claimant's testimony as to the severity of her pain and impairments is unreliable, the ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony. *Morgan v. Apfel*, 169 F.3d 595, 601-02 (9th Cir. 1999). In the absence of affirmative evidence of malingering, the ALJ's reasons must be "clear and convincing." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1038-39 (9th Cir. 2007); *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001); *Morgan*, 169 F.3d at 599. The ALJ "must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001)(citation omitted).

The ALJ found plaintiff's reported symptoms not credible to the extent they are inconsistent with the RFC finding. (Tr. 20.) With respect to plaintiff's alleged mental

impairment, the ALJ gave three reasons for rejecting plaintiff's credibility: (1) the medical record does not support the level of severity alleged; (2) plaintiff's mental health symptoms improved on medication; and (3) plaintiff's failure to attend scheduled appointments. (Tr. 21-24.) The court reviews these reasons to determine whether they are clear and convincing and supported by substantial evidence.

The first and second reasons mentioned by the ALJ in rejecting plaintiff's testimony are that plaintiff's mental health symptoms improved with medication and that the medical records do not support the degree of severity alleged. (Tr. 22.) An impairment that can be effectively controlled with treatment is not disabling. *Warre v. Comm'r, Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006). Further, while subjective pain testimony may not be rejected solely because it is not corroborated by objective medical findings, the medical evidence is a relevant factor in determining the severity of a claimant's pain and its disabling effects. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); 20 C.F.R. § 416.929(c)(2). The ALJ cited a number of medical records supporting the conclusion that plaintiff's mental health improved with medication and plaintiff is not as disabled as alleged. (Tr. 21-23, 248, 302, 483, 487,[1] 604, 607, 609, 616, 620, 630, 632, 633, 685.) This constitutes substantial evidence supporting clear and convincing reasons for the negative credibility finding.

Plaintiff argues the ALJ misinterpreted and exaggerated some of the records. (ECF No. 20 at 18.) The ALJ cited a December 1, 2009 note by Roberta Hansen, MSW, who indicated plaintiff was stressed but doing better than the previous therapy session. (Tr. 22, 609.) The ALJ noted plaintiff reported he had not taken his medication for several days. (Tr. 22, 609.) Plaintiff argues the ALJ misinterprets this record because Ms. Hansen indicated plaintiff's ORS scored decreased by 1.6 points since July 1, 2009. (ECF No. 20 at 18, Tr. 609.) However, while Ms. Hansen noted a decreased ORS score, she did not interpret the score or otherwise attach significance to it. (Tr. 609.) Furthermore, the ALJ cited the record for precisely the point raised by plaintiff: plaintiff's symptoms increased when he stopped taking his medication. This

---

[1] The ALJ noted that on January 14, 2009, plaintiff reported he stopped taking his meds because they made him "feel weird." (Tr. 22, 487.) However, review of the record reveals plaintiff was actually referring to his deceased son when he mentioned, "he stopped taking his medications, he was saying the meds were making him feel weird." (Tr. 487.) This error is harmless since the ALJ cited numerous other records supporting his conclusion. *See Parra v. Astrue*, 481 F.3d 742, 747 (9th Cir. 2007); *Curry v. Sullivan*, 925 F.2d 1127, 1131 (9th Cir. 1990); *Booz v. Sec'y of Health & Human Servs.*, 734 F.2d 1378, 1380 (9th Cir. 1984)

reasonably suggests plaintiff's symptoms can be controlled by medication and would therefore not be disabling. This also suggests plaintiff's symptoms are less severe than alleged when he is compliant with prescribed medication.

Plaintiff also argues the ALJ improperly interpreted a December 4, 2009 chart note by Joyce Ninnemann and concluded plaintiff's depression was "in remission." (ECF No. 20 at 18-19.) The ALJ pointed out Ms. Ninnemann indicated plaintiff had a setback due to personal issues but had restarted his medication and was showing improvement. (Tr. 22, 607.) Plaintiff told Ms. Ninnemann he does better when he takes his medication. (Tr. 606.) Plaintiff asserts the chart note includes a description of plaintiff's attempt to purchase materials for the purpose of committing suicide, suggesting plaintiff's depression was not improved. (ECF No. 20 at 19.) However, this record illustrates the ALJ's point that when plaintiff did not take prescribed medication, plaintiff's depressive symptoms increased, but when he took medication, his symptoms decreased. Additionally, plaintiff's argument that the ALJ improperly concluded plaintiff's depression was in remission fails because Ms. Ninnemann diagnosed plaintiff with major depression, recurrent, in early remission. (TR. 22, 607.) Thus, a treating source made that finding, not the ALJ.[2]

Plaintiff also suggests a December 8, 2009 chart note by Ms. Hansen is evidence that plaintiff's depression was not improved by medication. (ECF No. 20 at 19.) Plaintiff states the chart note shows plaintiff was "very depressed" about losing his home and moving to an apartment. (ECF No. 20 at 19.) Plaintiff asserts the counselor was helping plaintiff put the "best spin" on his situation, but it "was clearly a very stressful time for the plaintiff and one in which he was still experiencing severe depression." (ECF No. 20 at 19.) Ms. Hansen's note states plaintiff was depressed about having to move from his home, a situational stressor, but does not state he was "very depressed" or experiencing "severe" depression as plaintiff asserts. (Tr. 605.) Plaintiff extrapolates details from the December 8 chart note which are not supported by the evidence. On the other hand, the ALJ cited a chart note dated December 12, 2009, which noted plaintiff was dealing with some family "drama." (Tr. 604.) Ms. Hansen observed plaintiff was experiencing grief from losing his home, but was also excited about moving into a new place and starting a new beginning. (Tr. 604.) The ALJ reasonably inferred that this was an improvement

---

[2] Peter Gourley, ARNP, also diagnosed major depressive disorder recurrent in early remission on August 10, 2009. (Tr. 634.)

in plaintiff's point of view supporting the conclusion that plaintiff's depression improved with treatment.

Furthermore, the ALJ cited other instances in the record indicating plaintiff's depression improved with medication constituting substantial evidence. (E.g., Tr. 22, 620, 630, 632-33.) Plaintiff argues for another interpretation of the evidence but does not establish that the ALJ erred in fact or law in analyzing the evidence. The ALJ, not this court, is responsible for reviewing the evidence and resolving conflicts or ambiguities. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir.1989); *see also Richardson v. Perales*, 402 U.S. 389, 400 (1971). As a result, evidence of improvement with treatment and objective evidence reflecting a lesser degree of symptoms than alleged was properly considered by the ALJ and these are clear and convincing reasons supported by substantial evidence for rejecting plaintiff's credibility.

The third reason cited by the ALJ in rejecting plaintiff's credibility is plaintiff's failure to attend scheduled appointments. (Tr. 23.) If a claimant complains about pain or symptoms but fails to seek treatment, or fails to follow prescribed treatment an ALJ may use such failure as a basis for finding the complaint unjustified or exaggerated. *See, e.g.*, *Fair v. Bowen,* 885 F.2d at 603. The ALJ cited two records indicating plaintiff was a "no show" for appointments on September 25, 2009, and October 29, 2009. (Tr. 23, 619, 626.) However, two instances of missed appointments over a one-year period does not reasonably suggest plaintiff was missing appointments because he no longer needed them. As plaintiff points out, there is no evidence plaintiff missed appointments because he was feeling better. [3] (ECF No. 20 at 16.) In addition, two missed appointment is a small number compared to the significant number of appointments plaintiff attended. Substantial evidence does not support the ALJ's conclusion that plaintiff lacks credibility because he missed two counseling appointments. Notwithstanding, the ALJ cited other clear and convincing reasons supported by substantial evidence to justify the credibility finding. Therefore, the ALJ's error in considering missed appointments is harmless error. *See Carmickle v. Comm'r, Soc. Sec. Admin*, 533 F.3d 1155, 1162 (9th Cir. 2008).

---

[3] Without citing any legal authority, plaintiff's Reply Brief asserts the ALJ has an affirmative duty to inquire of the plaintiff as to possible reasons for noncompliance with medication and treatment. (ECF No. 23 at 6, citing ECF No. 20 at 16.) The court finds no authority for this position. To the contrary, a claimant's failure to assert a reason for failure to comply with treatment can cast doubt on the sincerity of the claimant's pain testimony. *Fair v. Bowen*, 885 F.2d 597, 603-604 (9th Cir. 1989).

Lastly, plaintiff cites evidence of police reports in 2010 and 2011. (ECF No. 20 at 16-17.) Plaintiff asserts the Ephrata police department "had the plaintiff under a watch for suicide risk. They have known him to have made several suicide gestures and attempts." (ECF No. 20 at 17-18.) Plaintiff does not cite the record and the court does not find evidence of a "suicide watch" or police documentation of suicide gestures or attempts in the record. The record contains six pages of "Offense Reports" from the Ephrata Police Department for December 21, 2010 and January 26, 2011. (Tr. 193-98.) On December 21, 2010, police responded to a report that plaintiff was seen laying down in his home but was not responding. (Tr. 196.) The police kicked in the door and reported "S [subject] was on a lot of meds and was sleeping heavy." (Tr. 196.) On January 26, 2011, police responded to a reported suicide attempt. (Tr. 197-98.) Plaintiff was unresponsive on arrival so the police again kicked in the door. (Tr. 198.) Plaintiff woke up but was lethargic. (Tr. 198.) He had taken doses of prescribed medication too close together. (Tr. 198.) The officers concluded plaintiff "was not suicidal but was in a deep medically induced sleep." (Tr. 198.) Plaintiff asserts "the police department had considerable difficulty getting him to come to the door or acknowledge their presence because of the severity of his depression." (ECF No. 20 at 17.) While police records confirm the police could not get plaintiff to respond to their arrival initially, the conclusion that the police considered this a "suicide attempt" or suicidal gesture is not supported by the reports. Further, plaintiff's conclusion that these events occurred "because of the severity of his depression" is not supported by any medical or psychological opinion in the evidence. As a result, this evidence does not undermine the ALJ's credibility finding.

2. **Hypothetical**

Plaintiff argues the ALJ failed to provide a complete and accurate hypothetical to the vocational expert. (ECF No. 20 at 19-20.) The ALJ's hypothetical must be based on medical assumptions supported by substantial evidence in the record which reflect all of a claimant's limitations. *Osenbrook v. Apfel*, 240 F.3D 1157, 1165 (9th Cir. 2001). The hypothetical should be "accurate, detailed, and supported by the medical record." *Tackett v. Apfel*, 180 F.3d 1094, 1101 (9th Cir. 1999). The ALJ is not bound to accept as trued the restrictions presented in a hypothetical question propounded by a claimant's counsel. *Osenbrook*, 240 F.3d at 1164; *Magallenes v. Bowen*, 881 F.2d 747, 756-57 (9th Cir. 1989); *Martinez v. Heckler*, 807 F.2d 771, 773 (9th Cir. 1986). The ALJ is free to accept or reject these restrictions as long as they are

supported by substantial evidence, even when there is conflicting medical evidence. *Magallenes*, 881 F.2d at *id.*

Plaintiff argues the ALJ failed to include in the hypothetical to the vocational expert limitations contained in medical evidence credited by the ALJ. (ECF No. 20 at 19-20.) Plaintiff points out the ALJ gave significant weight to the opinions of Dr. Bailey and Dr. Kraft,[4] the state reviewing psychologists. (ECF No. 20 at 19.) Dr. Bailey opined:

> [Claimant] can perform simple [tasks]; he would have difficulty w/ complex tasks due to being distracted by his [] sxs [symptoms]; he can have superficial contact w/ supervisors, coworkers and the general public. CPP [concentration, persistence and pace] would be slowed due to sxs at times. He has no adaptive limits.

(Tr. 569.) The RFC finding made by the ALJ includes the following mental limitations: "simple routine and repetitive tasks; no fast-paced production requirements; and superficial contact with the general public and co-workers." (Tr. 20.) The ALJ's hypothetical to the vocational expert stated: "The person would be limited, non-exertionally, to simple, routine, and repetitive tasks. No fast pace production requirements, as I think there was an indication to occasional concentration, persistence and pace issues. That person would be capable superficial interaction with the public and coworkers." (Tr. 63.)

Plaintiff first argues the ALJ's RFC and hypothetical to the vocational expert did not take into account Dr. Bailey's finding that concentration, persistence and pace would be slowed at times. (ECF No. 20 at 120.) As noted above, although the ALJ did not include a specific limitation regarding concentration, persistence and pace in the RFC, the ALJ noted such a limitation in the hypothetical to the vocational expert. (Tr. 63.) The vocational expert testified that a person with those mental limitations would be capable of other work available in significant numbers in the national economy. (Tr. 63-65.) Furthermore, this case is similar to *Stubbs–Danielson v. Astrue*, 539 F.3d 1169, 1173–1174 (9th Cir. 2008), wherein the Ninth Circuit upheld an ALJ's RFC finding which translated a claimant's pace limitation into the ability to perform simple tasks. *Id.* at 1174. In this case, Dr. Bailey's assessment of plaintiff's concentration, persistence and pace is adequately captured by the limitation to simple tasks, routine and repetitive tasks with no fast-paced production requirements. Thus, the ALJ did not err with respect to the limitation on concentration, persistence and pace.

---

[4] Dr. Kraft reviewed additional psychological records and affirmed Dr. Baileys' functional capacity assessment. (Tr. 647.)

Plaintiff next argues the ALJ failed to include Dr. Bailey's limitation of only superficial contact with supervisors. (ECF No. 20 at 20.) The ALJ did not include a limitation of superficial contact with supervisors in the RFC or hypothetical. Defendant fails to address this issue in briefing and there is no evidence in the record establishing this would not affect the outcome.[5] The ALJ therefore erred and the matter must be remanded for additional testimony from the vocational expert.

**3.      Opinion Evidence**

Plaintiff's arguments are not clear, but suggest the ALJ erred by rejecting the opinions of three psychological sources. (ECF No. 20 at 14-15.) In disability proceedings, ALJ's are directed to consider and weigh the opinion of each "acceptable medical source." 20 C.F.R. §§ 404.1512, 404.1527. An "acceptable medical source" is a licensed physician or psychologist. 20 C.F.R. §§ 404.1527(a), 416.927(a). A treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion is given more weight than that of a non-examining physician. *Benecke v. Barnhart*, 379 F.3d 587, 592 (9th Cir. 2004); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).

If the treating or examining physician's opinions are not contradicted, they can be rejected only with clear and convincing reasons. *Lester*, 81 F.3d at 830. If contradicted, the opinion can only be rejected for "specific" and "legitimate" reasons that are supported by substantial evidence in the record. *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995). Historically, the courts have recognized conflicting medical evidence, the absence of regular medical treatment during the alleged period of disability, and the lack of medical support for doctors' reports based substantially on a claimant's subjective complaints of pain as specific, legitimate reasons for disregarding a treating or examining physician's opinion. *Flaten v. Secretary of Health and Human Servs.*, 44 F.3d 1453, 1463-64 (9th Cir. 1995); *Fair*, 885 F.2d at 604.

Further, the opinion of an acceptable medical source is given more weight than that of an "other source." 20 C.F.R. §§ 404.1527, 416.927; *Gomez v. Chater*, 74 F.3d 967, 970-71 (9th Cir. 1996). "Other sources" include nurse practitioners, physicians' assistants, therapists, teachers,

---

[5]Harmless error only occurs if the error is inconsequential to the ultimate nondisability determination. *See Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006); *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055-56 (9th Cir. 2006).

social workers, spouses and other non-medical sources. 20 C.F.R. §§ 404.1513(d), 416.913(d). However, the ALJ is required to "consider observations by non-medical sources as to how an impairment affects a claimant's ability to work." *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987). Non-medical testimony can never establish a diagnosis or disability absent corroborating competent medical evidence. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). Pursuant to *Dodrill v. Shalala*, 12 F.3d 915 (9th Cir. 1993), an ALJ is obligated to give reasons germane to "other source" testimony before discounting it.

Plaintiff summarized the opinions of Dr. Duris, Dr. Dalley,[6] and Roberta Hanson, MSW and asserts they are "entirely consistent" and establish that plaintiff meets a listing. (ECF No. 20 at 14-15.) The ALJ gave little weight to each of these opinions. (Tr. 23-24.) Plaintiff argues the ALJ did not provide adequate reasons for rejecting the opinions. (ECF No. 20 at 17.) However, plaintiff's only specific argument about the ALJ's reasoning is that, "Throughout his decision, the Administrative Law Judge suggests as one of the reasons for ignoring the examining and treating sources of opinion is because they failed to recognize 'the great improvement' of the plaintiff as he proceeded with treatment for psychiatric problems in 2009." (ECF No. 20 at 18.) Plaintiff cites only the office visit notes of Roberta Hansen, MSW, which were discussed in detail and rejected as the basis for error, *supra*. Plaintiff does not address the ALJ's reasons for rejecting the opinions of Dr. Duris and Dr. Dalley or identify any error in the ALJ's consideration of them.

The court ordinarily will not consider matters on appeal that are not specifically and distinctly argued in an appellant's opening brief. *See Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008). Moreover, the Ninth Circuit has repeatedly admonished that the court will not "manufacture arguments for an appellant" and therefore will not consider claims that were not actually argued in appellant's opening brief. *Greenwood v. Fed. Aviation Admin.*, 28 F.3d 971, 977 (9th Cir. 1994).

Notwithstanding, giving the benefit of the doubt to the claimant and because this matter is remanded on other grounds, the court notes the ALJ considered several improper reasons in

---

[6] Brooke Sjostrom, M.S., LMHC appears to have examined plaintiff and completed a DSHS Psychological/Psychiatric Evaluation form and written narrative. (Tr. 450-58.) Dr. Dalley signed both documents and stated he adopted as his own the accuracy, objectivity, validity, findings and conclusions of the narrative report. (Tr. 458.) Accordingly, the court refers to the Sjostrom/Dalley findings as the opinion of Dr. Dalley.

rejecting Dr. Dalley's opinion. The ALJ noted the opinion is based on a "one-time conclusory evaluation" based on "subjective allegations of an individual with documented secondary gain motivation as a referral solely for an evaluation to determine entitlement to state general assistance benefits." (Tr. 25.) The purpose for which medical reports are obtained does not provide a legitimate basis for rejecting them. *Lester v. Chater*, 81 F.3d 821, 832 (9th Cir. 1996). Furthermore, an examining opinion is, by definition, an opinion based upon a one-time examination and must be considered as part of the medical or psychological evidence. *See Benecke v. Barnhart*, 379 F.3d 587, 592 (9th Cir. 2004); *Lester*, 81 F.3d at 830. The ALJ also rejected Dr. Dalley's opinion because plaintiff's MMPI score was invalid. (Tr. 25.) However, Dr. Dalley opined the invalid MMPI score "may be a reflection of some difficulties comprehending the nuance of some test items or [a] plea for help." (Tr. 456.) Dr. Dalley's opinion was based on other factors, including personal observation and interview, Trails A & B testing, and a mental status exam. (Tr. 454-56.) There is no basis for the ALJ to reject Dr. Dalley's entire opinion because plaintiff's MMPI score was invalid. Lastly, the ALJ rejected Dr. Dalley's opinion because neither Dr. Dalley nor Ms. Sjostrom possess vocational expertise to assess plaintiff's limitations as they relate to the "work environment." (Tr. 25.) It is true that the ALJ is responsible for the RFC finding and determining the ultimate issue of disability, not the physician or psychologist. *See Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001); S.S.R. 96-5p. However, Dr. Dalley's opinion identifies specific psychological limitations and contains a written explanation regarding those limitations. (Tr. 452-53, 457-58.) Even if Dr. Dalley's opinion strayed into areas reserved to the Commissioner, this is not a reasonable basis for rejecting all limitations and assessments contained in the opinion.

Furthermore, it is noted that the ALJ rejected all of the psychological opinion evidence except the findings by non-examining reviewing psychologists Dr. Bailey and Dr. Kraft. In appropriate circumstances, opinions from state agency medical consultants may be entitled to greater weight than the opinions of treating or examining sources. S.S.R. 96-6p. The opinion of a non-examining physician may be accepted as substantial evidence if it is supported by other evidence in the record and is consistent with it. *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995); *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995). Case law requires not only an opinion from the consulting physician but also substantial evidence (more than a mere scintilla but less than a preponderance), independent of that opinion which supports the rejection of

contrary conclusions by examining or treating physicians. *Andrews*, 53 F.3d at 1039. The only reason given by the ALJ for accepting the opinions of Drs. Bailey and Kraft is they "are consistent with the medical evidence." (Tr. 23.) However, since the ALJ rejected all other psychological opinion evidence, it is unclear what evidence was relied on as consistent with the non-examining psychologist findings. Further, the ALJ did not address or reconcile the differences between the findings of Drs. Bailey and Kraft and the findings of the rejected treating and examining physicians. When the ALJ rejects all of the treating and examining opinions, it is especially necessary for the ALJ to set forth his own interpretation of the evidence and explain why it, rather than the doctors', are correct. *See Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007). An examiner's findings should be as comprehensive and analytical as feasible so that a reviewing court may know the basis for the decision. *Lewin v. Schweiker*, 654 F.2d 631, 635 (9th Cir. 1981).

       As a result of the ALJ's improper consideration of several factors regarding Dr. Dalley's opinion and the ALJ's, and because of the ambiguities regarding the ALJ consideration of the opinion evidence, on remand the ALJ should reconsider the psychological opinion evidence, explain how findings are supported by substantial evidence, and provide legally sufficient specific, legitimate reasons for rejecting any opinion.

# CONCLUSION

The ALJ's decision is not supported by substantial evidence and free of legal error. On remand, the ALJ should reconsider the psychological opinion evidence and take additional testimony from a vocational expert which includes all limitations credited by the ALJ.

**IT IS ORDERED:**

1. Plaintiff's Motion for Summary Judgment (**ECF No. 19**) is **GRANTED.** The matter is remanded to the Commissioner for additional proceedings pursuant to sentence four 42 U.S.C. 405(g).

2. Defendant's Motion for Summary Judgment (**ECF No. 21**) is **DENIED**.

3. An application for attorney fees may be filed by separate motion.

The District Court Executive is directed to file this Order and provide a copy to counsel for plaintiff and defendant. Judgment shall be entered for plaintiff and the file shall be **CLOSED**.

DATED November 27, 2013

      S/ JAMES P. HUTTON  
    UNITED STATES MAGISTRATE JUDGE